

E-FILED | 8/1/2025 12:19 PM
Cabell County Circuit Clerk
Michael J. Woelfel

### IN THE CIRCUIT COURT OF CABELL COUNTY
### HUNTINGTON, WEST VIRGINIA

**JAIME LANHAM,**

    **Plaintiff,**

v.                                                                Civil Action No.

**DIRECTV, LLC**

    **Defendant.**

### COMPLAINT.

This is a civil action under West Virginia law to make whole and compensate the Plaintiff, Jaime Lanham, for the unlawful actions and employment practices of the Defendant, Directv, LLC. Plaintiff contends the Defendant has unlawfully discriminated against him in violation of the provisions of the West Virginia Human Rights Act (WVHRA) (W. Va. Code §16B-17-1, *et seq.*) by discriminating against him and then terminating him on the basis of his race. Plaintiff seeks all available relief under the WVHRA and the common law of West Virginia.

### PARTIES

1. Plaintiff, Jaime Lanham, is and, at all times alleged, was a citizen and resident of Huntington, West Virginia.

2. Defendant, Directv, LLC, is a foreign company with its principal place of business in El Segundo, California licensed to do business in West Virginia. Defendant offers access to digital entertainment and streaming services to its subscribers.

3. At all times alleged, Defendant acted through its agents, employees, supervisors, directors, officers and assigns and within the full scope of agency, office, employment, or assignment.

EXHIBIT 1

## JURISDICTION AND VENUE

4. This Court has jurisdiction and venue over this civil action under Article VIII, § 6 of the West Virginia Constitution and West Virginia Code § 56-1-1.

## SPECIFIC ALLEGATIONS OF FACT

5. Mr. Lanham is of Hispanic origin.

6. In November of 2020, the Defendant hired Mr. Lanham to work in its loyalty department.

7. Approximately three weeks into his employment, during his on-the-job training, a management employee asked Mr. Lanham if would consider changing his name from "Jaime," the proper pronunciation of which is "HI-me." This is because many of Mr. Lanham's English-speaking co-workers and managers improperly pronounced his first name as "Jay-mee."

8. Rather than encourage proper pronunciation or respect Mr. Lanham's name as he pronounced it, the Defendant required Mr. Lanham to list his name phonetically as "HI-me" in his e-mail and in work-related communications. This continued for approximately 18 months despite Mr. Lanham's having timely reported it to management when it first happened.

9. On May 12, 2022, in response to the Defendant's proclamation that it advanced DEI (diversity, equity, inclusion) policies, Mr. Lanham raised the forced alteration of his first name on the company's internal social platform, Workplace, as evidence of the Defendant's hypocrisy about its alleged commitment to non-discrimination in its workplace.

10. Only after Mr. Lanham posted his concern about the Defendant's forced alteration of his first name's pronunciation did the Defendant finally arrange for correction of his company

EXHIBIT 1

e-mail and communication handle.

11. At no time did Mr. Lanham ever request alteration of the pronunciation of his name or any e-mail or company handle that otherwise altered his proper name. Rather, the Defendant imposed the change on Mr. Lanham until it corrected the same after a year and a half.

12. In addition to the forced alteration of his name's pronunciation, the Defendant also fostered a racially, hostile work environment for Mr. Lanham. As example, a manager from another team, Emeli Fuentes, who is also Hispanic, openly questioned Mr. Lanham's Hispanic identity, which caused at least one employee to ask Mr. Lanham "What part of Mexico is your dad from?"

13. After this incident, Mr. Lanham shared his son's DNA results to validate his ethnicity, and timely reported the matter to Defendant around the second week of July of 2024.

14. After claiming that it conducted an internal investigation, the Defendant opined that Mr. Lanham's claim lacked merit. The Defendant, however, did not contact either Mr. Lanham, the other employee involved in the incident, nor did it request any information from them in reaching its conclusion.

15. Mr. Lanham has documented proof (texts) of the incident, and the Defendant should also have records available supporting the discrimination against Mr. Lanham in its internal e-mail systems, chat logs, or call recordings.

16. On another occasion, in August of 2024, the Defendant disproportionately disciplined Mr. Lanham and improperly escalated his punishment involving his use of a whiteboard. The Defendant placed Mr. Lanham on a nine-month probation while a white, female employee who had engaged in similar conduct involving the Defendant's communication system received a far less stringent punishment because the Defendant simply told her not to

EXHIBIT 1

engage in that behavior again.

17. In September of 2024, a particularly disturbing example of the racially, hostile work environment at Defendant's place of business in Huntington occurred in a private group chat where employees, including at least one white supervisor, mocked a Hispanic customer named "Jesus" (pronounced "Hey-soos"), and made disparaging jokes and remarks about his name by treating it as a punchline rather than with respect owed to any individual.

18. Mr. Lanham immediately reported the above incident to his white, direct supervisor, and also provided screenshots as proof. Mr. Lanham made it crystal clear that he found the comments offensive, inappropriate, and discriminatory. Despite his report, the Defendant did absolutely nothing.

19. In August of 2023, the Defendant had previously reassigned Mr. Lanham to another department following his report about his supervisor's ill treatment of him. Mr. Lanham's transfer resulted in significantly fewer scheduling options and reduced bonus incentives, and it reduced his pay from $1300 in bonuses to less than $600. The Defendant's reassignment of Mr. Lanham also hindered his court-allowed parenting time with his children.

20. On information and belief, the above, adverse actions of Defendant were done maliciously and in an effort to create and perpetuate a racially, hostile work environment for Mr. Lanham.

21. On January 5, 2025, during a coaching session, Mr. Lanham yet again raised his concerns about his disparate treatment by the Defendant against him based on his Hispanic identification.

EXHIBIT 1

22. During this meeting with his manager, Mr. Lanham raised specific incidents of racial discrimination (including and not limited to those identified previously here), and reminded the Defendant of its failure (or refusal) to investigate his repeated claims of discrimination or consider his documented, written proof of the same.

23. Four weeks later, on February 3, 2025, the Defendant terminated Mr. Lanham because it claimed he had exceeded his allotted attendance points.

24. In truth, the Defendant had miscalculated Mr. Lanham's attendance points or unfairly applied the same.

25. As a result of the Defendants' actions, Mr. Lanham has suffered loss of income, emotional distress, and other damages for which he seeks relief.

## COUNT I: RACE DISCRIMINATION

26. Plaintiff incorporates the previous paragraphs here.

27. Under §16B-17-3(h) of the West Virginia Human Rights Act, the term "discriminate" or "discrimination" means "to exclude from, of fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status. . . ."

28. Plaintiff is Hispanic, and his race receives protection under the West Virginia Human Rights Act (W. Va. Code §16B-17-9, *et seq.*).

29. Throughout his employment, Mr. Lanham satisfied all requisite job qualifications, was qualified for the positions he held, and performed his duties in a manner that met or exceeded the Defendant's legitimate expectations.

30. During his employment, Plaintiff was continually subjected to harassment, hostility, and intimidating

EXHIBIT 1

behavior based on his race or relating to his report of such conditions that he considered discriminatory against him because he is Hispanic.

31. Plaintiff did not consent to, encourage or welcome the discrimination described in the preceding paragraphs.

32. The harassment or discrimination against Plaintiff was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment and create an abusive or discriminatory work environment.

33. Plaintiff gave Defendant notice of the harassment and hostile work conditions as previously alleged by his detailed and specific allegations above, or Defendant had notice of the harassment because it was pervasive and obvious.

34. Defendant failed to take prompt, effective remedial action to correct the discriminatory conditions of Mr. Lanham's employment despite his repeated and numerous reports of the same over the course of his last two years of employment.

35. Defendant had the power to alter or affect the terms and conditions of Plaintiff's employment, and Defendant denied Plaintiff benefits of employment by failing to to treat him equally as his similarly-situated, non-Hispanic co-workers.

36. The Plaintiff's race is and was a motivating factor in the Defendant's above-described adverse decisions and actions against him and its failure to provide him with a job environment free from unlawful hostility or discrimination based on his Hispanic identity.

37. Defendant's treatment of Plaintiff was done with malice and with reckless indifference to his rights and his emotional and physical well-being.

38. As a direct and proximate result of Defendant's actions and/or failure to take appropriate

EXHIBIT 1

action, Mr. Lanham has suffered and continues to suffer substantial damages. Wherefore, he requests relief as provided in the prayer.

### COUNT II: RETALIATORY DISCHARGE BASED ON PROTECTED REPORT OF DISCRIMINATION UNDER THE WEST VIRGINIA HUMAN RIGHTS ACT

39. Plaintiff reasonably believed in good faith that Defendant had created a racially hostile work environment against him based on his Hispanic identity, and he made numerous protected reports to the Defendant about a work environment that he considered hostile and discriminatory against him as a Hispanic throughout the duration of his employment.

40. In striving to comply with his duties as an employee and with West Virginia law prohibiting discriminatory practices, Plaintiff notified Defendant of the hostile and harassing treatment against him in the workplace and, in doing so, engaged in legally protected activity.

41. Despite Mr. Lanham's repeated reports of Defendant's inappropriate treatment of him by its management and employees, the Defendant failed to remedy the reported hostile conditions and fired him just a few weeks after his most recent report of discrimination.

42. Defendant's termination of Plaintiff's employment resulted from his legitimate efforts to comply with West Virginia law and his duties as an employee in seeking to have Defendant comply with the West Virginia Human Rights Act and prohibit race discrimination in its workplace.

43. Plaintiff's discharge and the Defendant's recurring adverse treatment against him during his employment immediately followed his protected activities such that the Court can easily infer retaliatory motivation.

44. The Defendant's treatment and termination of Plaintiff is a retaliatory and wrongful discharge in violation of West Virginia Code § 16B-17-9(7)(C) that prohibits an employer

EXHIBIT 1

from engaging in any form of reprisal or otherwise discriminating against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under the West Virginia Human Rights Act.

45. As a direct and proximate result of Defendant's intentional, discriminatory and retaliatory acts against him, Plaintiff has suffered and continues to suffer injury, including, but not limited to, loss of past and future earnings and other employment benefits, anguish, pain and suffering, humiliation, loss of enjoyment of life, costs associated with obtaining employment, embarrassment, damage to his reputation and other past and future pecuniary losses. Wherefore, Plaintiff seeks compensatory damages and other relief as set forth below.

46. Any reason alleged by Defendant for terminating the Plaintiff and denying Plaintiff employment benefits and fair, non-discriminatory treatment in the course of his employment is demonstrably false, a sham, and a mere pretext for Defendant's real reason for firing the Plaintiff, which is Defendant's deliberate retaliation against him for opposing discriminatory practices that he believed in good faith violated the West Virginia Human Rights Act.

**WHEREFORE**, Plaintiff requests judgment as follows:

On all counts, grant Plaintiff actual damages for lost wages, lost compensation and fringe benefits in an amount to be determined by a jury;

On all counts, grant Plaintiff general and compensatory damages for annoyance, inconvenience, embarrassment, humiliation and distress suffered by him as a direct and proximate result of Defendant's conduct;

EXHIBIT 1

On all counts against Defendant grant Plaintiff punitive damages in an amount to be determined by a jury and sufficient to deter its future improper conduct and to punish it for the reckless and willful actions against Mr. Lanham;

Prejudgment and post judgment interest on all amounts allowed by law;

All costs incurred in pursuing this action;

Attorney fees; and

Such other relief as this Court deems fair and proper in the interest of justice.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES.**

> PLAINTIFF, JAIME LANHAM
> By Counsel,

s/Hoyt Glazer
Hoyt Glazer, Esq. (WV Bar No. 6479)
GLAZER SAAD ANDERSON L.C.
320 Ninth Street, Suite B
Huntington, WV 25701
T. 304 522-4149
hoyt@gsalaw-wv.com

**EXHIBIT 1**